1. The trial court in Petitioner's case violated his federal due process right to present a defense by excluding evidence of the aggressive and violent character of the victim in the form of two convictions for weapons possession, one a baton and one a sawed-off shotgun. And the second issue is ineffective assistance of counsel in that Petitioner's trial counsel failed to investigate, interview, or subpoena percipient witnesses which would have corroborated his self-serving testimony about what happened at the shooting, the scene of the shooting, specifically the claim that the decedent came up in a car screeching to a halt, came toward the Petitioner, and pulled something out of his, took his topcoat off and pulled something out of his jacket. And also the failure to adequately argue for admission of those previous convictions at trial. And then the third issue briefly is we'd like a remand for an evidentiary hearing on the issue of the ineffective assistance of counsel claim as to why trial counsel did or did not do what he did or did not do. I think the record is a little bit vague on that. Mr. Cormier, Petitioner, needed independent corroboration other than his self-serving testimony. When the trial court excluded the evidence in the form of the sawed-off shotgun conviction, it ensured that Petitioner did not get to show the jury a full and fair picture of what transpired that day and of the character of the victim. The prior convictions speak to what happened that day and what your client understood. And your client's state of mind appears to be the reason that the violence or violent background of the victim is an issue. But your client doesn't purport to have known about these prior convictions. That's correct. And the trial court thought that that lowered the probative value of that evidence. However... Why didn't it? Pardon me? I think it lowered the probative value, too. So you need to tell me why it didn't. I think that in terms of it being corroborative of what Petitioner claims to have known about victim's reputation as a whole, having known the victim his entire life and knowing other things, perhaps uncharged crimes that the victim committed, it just was generally corroborative. And I think there's case law interpreting evidence code section 1103, which provides for exposing a victim's prior aggressive or violent conduct. The cases do not require that. What did your client testify to regarding his knowledge of the victim? He testified he knew that the victim was a violent person and had beat people down before and beaten them with weapons. I don't know. I can't specifically cite to the record. I apologize. But he didn't know about the convictions. He did not know about the convictions. But our position is that that was not necessary to their admission. You know, I think I'm willing to go along with you to the following extent. He says I knew that this victim was a violent person and I had reason to fear him. The jury doesn't know much about the victim. So how is the jury supposed to know whether he's right to fear him? Well, one of the ways the jury can be encouraged to know that he's right is to introduce this evidence. So I'm with you so far. That's correct, Your Honor. But you need to show me that there's constitutional error under AEDPA, and that's why I'm afraid I can't go. Well, I think that the trial court's feeling that the probative value of that was lowered was in relation to the evidence code 352 analysis, which it gets a little complicated here as the court has read. One of the officers who arrested the victim in this previous sawed-off shotgun arrest was currently, then currently on trial in the famous Ryder's case in Oakland. And so the judge considered it to be a waste of probable undue consumption of time to have that officer subpoenaed when the prosecutor was going to turn around and turn it into a mini trial about issues of credibility of that officer, which may or may not have been a good idea. But I think that this sort of bleeds into my ineffective assistance claim, because there was another officer there who was not a Ryder who might have been called to subpoena to testify and could have gotten around that issue. I think that it was error for the court to exclude that evidence, particularly in light of the fact it was probably a tempest in a teapot. I think that if this officer Mabinag were called to testify about this sawed-off shotgun incident, he most likely would have asserted his Fifth Amendment privilege as to any questions that would have involved anything about planning evidence or anything about police misconduct about the Ryder's trial. And that would have been done in limine. It would not have taken too much time. I think that given that, it was error for the court to assume that this was going to be an undue consumption of time. And when a man's facing 40 years to life, I think the Constitution trumps Evidence Code 352, and he should have been entitled to present that evidence. What evidence was there that the victim was a violent person? What evidence was there aside from the convictions? Of the victims being a violent person. Well, there was the testimony of the defendant petitioner here, who was bullied earlier in the day by this person, was told that he was a punk, and that the victim was a gangster and a killer, and he was a punk bitch, I think, if you'll excuse me, and basically asserted that he was a killer and a gangster, and bullied this person, spit in his face, bullied petitioner and spit in his face. So there was evidence from that earlier that day. And then there was the defendant's testimony about what he knew of the victim's character. But it was unsupported by anything else. And that's, I guess, what I was asking. Was there any other supporting evidence? Well, the victim's own sister, strangely enough, testified that at the preliminary examination, that he beat people up and that he was a fighter. And that, again, bleeds into my ineffective assistance argument, which I can address at any time now. But there was evidence from the victim's own sister that he was a fighter and that he beat people up. Was that not brought forward in the final? It was brought forward to some extent, I believe, Your Honor. It's not in the excerpts of record, but I believe that it was brought out. However, Petitioner's Trial Counsel failed to elicit any kind of testimony about the incident. The victim's sister actually pulled up in the car just before the victim was shot and at the preliminary examination, and I assume at trial, claims to have said something about, why don't you take your belt off and whoop them like you always do. And I think the Attorney General's position is that, well, that wouldn't have borne fruit because she said at the preliminary examination that she was just joking. But clearly, according to the defendant's testimony, the victim did take her advice and, according to the defendant, pulled something out of his pocket, or pulled something out of his waist, which turned out to be a belt. So there was ample evidence. But in terms of other evidence that could have been adduced at trial, and this goes to the ineffective assistance claim, the Petitioner's Trial Counsel, after being practically invited by the trial court to seek out this other officer who was not a writer and whose testimony would not have taken an undue amount of time, he just remained silent the entire time about why this officer couldn't be called or any attempts to subpoena this officer. There were two percipient witnesses who, again, the record is very vague on this, but the two percipient witnesses who later declared that they would have been available to testify and saw what happened, saw the bullying that took place, saw the pulling something out of the waist and the rapid approach and chasing of Petitioner. Saw what bullying? They saw the bullying that the victim, the victim bullying the Petitioner earlier in the day. Yeah, not at that time. Right, not at that time. But the percipient witnesses were there at both times and saw what took place just before the shooting. And in the record, you have the Petitioner's counsel saying something that, something to the effect that the witnesses that were there are generally uncooperative and with respect to one specific witness, he, I've heard from the family that he doesn't want to cooperate. Nothing about a subpoena, nothing about an investigation, independent investigation. He simply took the Petitioner's family's word-of-mouth statements that he, the witnesses that were there are generally uncooperative. He did, the attorney did interview Salters, right? That's not clear to me from the record, Your Honor. If I missed something, please correct me. But it's my understanding that he made some attempt. But all that I had from the record was that he was told by the family. There's nothing specifically said. I don't recall him saying he interviewed Salter. But I could be wrong about that, and I apologize if I am. But I think an evidentiary hearing would have been in order and should still be in order, given that if Petitioner's claims about ineffective assistance are proved or could be proved, he's entitled to relief. But without more information about why this other officer wasn't subpoenaed or why these precipient witnesses who turned out to be available were supposedly uncooperative when that issue came up on the record at trial. Okay, let's hear from the other side, and we'll give you a minute. Good afternoon. Ross Moody, Deputy Attorney General. The problem with this case was not the exclusion of the evidence. The problem with this case is that it's tough to sell self-defense when you shoot somebody in the back. It's tough to sell self-defense when you say, I wasn't afraid of him. It's tough to sell self-defense when you say, I've known him my whole life. I've never seen him with a gun. And so although he did testify sort of in a rote fashion, I acted in defense of my life, he gave it all away on cross-examination. And the physical evidence, the fact that the victim was shot in the back and in the side, is inconsistent with you being charged and defending yourself. So I think that's important to keep this in perspective. As far as whether or not this evidence from the 1992 possession of the sawed-off shotgun should have come in, petitioner is eight years old in 1992. This is a 10-year-old conviction, and on its face, just having a sawed-off shotgun doesn't give you very much. That's the reason that they didn't take the prosecutor up on the offer to stipulate to the conviction. He wants to bring in this florid testimony from one of the riders that he was about to pull a robbery and he spat in my face and all this stuff. Speaking only for myself, I have to say that that rises at most to an error of state law, and I'm not even sure it gets that high. But that's my own view. Well, that's my view as well. As far as the ñ I just want to correct one record point. There's nothing in the record that suggests that the victim was holding a belt or that he removed a belt. The only testimony that he had an object in his hand was from the petitioner. So you can look in the record for that. You won't find it. And basically, I'm happy to answer any questions, but I think the bottom line in this case is that, as we heard earlier today, you play the hand you're dealt. And he didn't have a good hand for the defense in this case. How about the failure to make an argument for imperfect self-defense? Well, I think that that was an option, but it had the same problems when you have your client say, I wasn't afraid. That's a big problem. I mean, that's what you're going to go and argue. So I can see why, tactically, he took his best shot at it with the self-defense argument. Okay. Thank you. Thank you. Would you like to answer? Just briefly, Your Honor. As far as the evidence of the victim being shot in the back, I don't think that's dispositive on any issue of self-defense. A person can be shot in the back. I mean, he's shot on the side, in the back. A person's body can be contorting while they're running to or from something, and I don't think that's enough to hang your hat on. How does that? I have a hard time picturing that. Well, I fortunately have a hard time picturing that as well, Your Honor. But I think that it is possible to be shot in the side and in the back without necessarily running away. We don't know exactly what happened or in what position the gun was to the body. It's not necessarily probative of – And that's not a subject that any of the witnesses you say should have been offered up can speak to. Is that correct? Well, there weren't. Nobody else apparently is in a position to speak to that. That's true. The witnesses claim not to have seen the shooting, but they heard the shots and they saw what happened just leading up to the shooting. And as far as imperfect self-defense, I recognize that that's a hard one, but I would say that the jury was left with an all-or-nothing decision, and Mr. Cormier, the petitioner here, does claim to have been afraid at the moment before the shooting and for whatever reason decided not to testify to that under cross-examination about the earlier altercation. But submitted. Thank you. Thank both sides for their helpful argument. Cormier v. Runnels is now submitted.
judges: Hug, Fletcher, Clifton